IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**STEPHEN P. ARNOT,**
Chapter 7 Trustee for the Estate of Jason Daniel
Neel and Connie Lee Neel,

        Plaintiff,

v.

**SERVICELINK TITLE COMPANY OF OREGON,** *f/k/a* LSI Title Company of Oregon, LLC,

        Defendant.

Case No. 3:17-cv-00591-MO

OPINION AND ORDER

**MOSMAN, J.,**

On October 17, 2019, I heard oral argument in two companion cases—*Arnot v. ServiceLink Title Company of Oregon* (3:17-cv-00591-MO) and *Arnot v. Weibel et al.* (3:17-cv-00592-MO)—regarding multiple motions for summary judgment filed by the various defendants. Min. of Proceedings [ECF 45].[1] As stated on the record, I granted the motions for summary judgment and dismissed both cases with prejudice. In both cases, I granted summary judgment on two independent grounds: 1) that Plaintiff failed to join required parties, and 2) that Plaintiff's claims are barred by the two-year statute of limitations for avoidance actions under bankruptcy law. In *Arnot v. Weibel et al.* only, I granted summary judgment for a third reason: that

---

[1] Unless otherwise noted, for ECF documents I cite to the docket of *Arnot v. Weibel et al.* (3:17-cv-00592-MO).

1 – OPINION AND ORDER

Plaintiff's claims are barred by the five-year statute of limitations under Oregon Revised Statute ("ORS") 86.767(6). The following opinion supplements my comments made at oral argument and further explains my decision.

## BACKGROUND

### I. General Background

Both cases arise out of a similar set of facts. In both cases, Plaintiff is the chapter 7 trustee of the bankruptcy estate of a married couple. Years ago, each couple financed the purchase of a home by signing a "trust deed" with a lender, pursuant to the Oregon Trust Deed Act ("OTDA"). *See, e.g.*, Notice of Removal [ECF 1 - Attach. 1] Ex. A ("Compl.") at ¶ 6. Under the OTDA, a debtor secures a home loan with a trust deed by granting a legal interest to a "trustee" and a beneficial interest to a "beneficiary." *See Brandrup v. ReconTrust Co.*, 353 Or. 668, 676 (2013). Should the debtor default on the loan, the trustee has the right to initiate a non-judicial foreclosure sale (the legal interest), the proceeds of which would go to the beneficiary to satisfy the loan obligation (the beneficial interest). *Id.*

In accordance with a common practice in the Oregon mortgage industry at the time, each of the couples' trust deeds named the Mortgage Electronic Registration System ("MERS") as the beneficiary to the trust deed—but solely as the "nominee" for the lender. Compl. [1-1] at ¶ 6; Decl. of MERS, *Arnot v. ServiceLink*, No. 3:17-cv-00591-MO [ECF 34 - Attach. 1] Ex. A at 2; *see generally Brandrup*, 353 Or. at 675-83 (2013) (describing the OTDA and the practice of naming MERS as the beneficiary to a trust deed). Generally speaking, in its capacity as beneficiary/nominee, MERS would handle the transfer of rights in a trust deed by appointing successors in interest and recording the assignment. *See Brandrup*, 353 Or. at 675-83. For example, when a transaction called for assigning the legal interest of the "trustee" to a new

entity, MERS would appoint the "successor trustee" and record the assignment. *See id.* Thus, in Oregon, it was frequently the case that a non-judicial foreclosure sale would be initiated by a "successor trustee" that had been appointed by MERS. *See id.* However, in June 2013, the Oregon Supreme Court held that MERS was ineligible to serve as a "beneficiary" to a trust deed under the OTDA. *Brandrup*, 353 Or. at 674 ("[A]n entity like MERS, which is not a lender, may not be a trust deed's 'beneficiary,' unless it is a lender's successor in interest."); *see also Niday v. GMAC*, 353 Or. 648 (2013). That holding cast serious doubt upon the validity of non-judicial foreclosure sales that had been initiated by a "successor trustee" appointed by MERS.

Both of the couples here eventually defaulted on their loan obligations and went into bankruptcy.[2] Sure enough, each of their homes was sold—years ago—in a non-judicial foreclosure sale initiated by a MERS-appointed successor trustee. Since then, purported ownership of these homes has changed hands multiple times and the homes are currently resided in by individuals who assuredly believe they lawfully purchased and own the homes. Plaintiff— the trustee of both couples' bankruptcy estates—now asks this court to declare that these non-judicial foreclosure sales are void and that any purported subsequent conveyance is therefore invalid, thus reestablishing the couples' (or their bankruptcy estates') ownership interest in the properties. *See* Pl.'s Resp. to Mot. for Summ. J. [ECF 37] at 5.

//
//
//
//
//

---

[2] The particular facts and timeline for each case is discussed in detail below.

3 – OPINION AND ORDER

II. **Case-Specific Factual Background**

A. *Arnot v. Servicelink* (3:17-cv-00591-MO)[3]

On August 12, 2005, Jason and Connie Neel ("the Neels") purchased a home financed by a trust deed (as described above). First Am. Compl. ¶¶ 5-7, *Arnot v. ServiceLink et al.*, No. 16-03044-DWH (Bankr. D. Or. Aug. 15, 2016) [ECF 52] ("ServiceLink FAC"). They eventually stopped making payments on their loan.[4] *See id.* ¶ 10. On January 19, 2010, MERS appointed Defendant ServiceLink as the "successor trustee" of the Neel's trust deed. *Id.* On August 6, 2010, a non-judicial foreclosure sale, initiated by ServiceLink, was conducted and the home was purchased by GMAC Mortgage, LLC ("GMAC"). *Id.* On October 18, 2010, Philip and Marianne Prodehl, a married couple, along with Joseph Prodehl, an unmarried man, jointly purchased the home from GMAC. Cleverley Am. Decl. [ECF 45] Ex. 14 at 1. On December 12, 2014, Phillip and Marianne Prodehl conveyed their interest in the property to Joseph Prodehl. *Id.* Ex. 20 at 1. Joseph Prodehl is the current occupant of the home and has encumbered the property with a new deed of trust and other lines of credit. Def. Mot. Summ. J. [ECF 23] at 6; Cleverley Am. Decl. [45] Ex. 21, 23.

B. *Arnot v. Weibel et al.* (3:17-cv-592-MO)

On December 1, 2000, Robert and Marlene Christensen ("the Christensens") purchased a home financed by a trust deed (as described above). Rosenberg Decl. [ECF 34 - Attach. 1] Ex. 1

---

[3] In this subsection only, I cite to ECF documents contained on the docket of *Arnot v. ServiceLink* (3:17-cv-00591-MO). Thereafter, I resume citing to ECF documents contained on the docket of *Weibel et al.*, unless otherwise noted.

[4] The Neels originally petitioned for bankruptcy relief on June 21, 2011. ServiceLink FAC ¶ 1. The bankruptcy case was closed on October 17, 2011. *Id.* ¶ 3. On March 2, 2016, the Neels' bankruptcy case was re-opened and Plaintiff Arnot was appointed as the current chapter 7 trustee. *Id.*

("Weibel FAC") at ¶¶ 5-7. On August 1, 2009, the Christensens defaulted on their home loan.[5] Capital One Decl. [ECF 26 - Attach. 1] at ¶ 11. On December 11, 2009, MERS appointed Defendant David Weibel as the "successor trustee" of the Christensen's trust deed. Weibel FAC ¶ 8. On June 30, 2010, Weibel conducted a non-judicial foreclosure sale where the home was purchased by LaSalle Bank National Association, who eventually conveyed the property to Defendant U.S. Bank. *Id.* ¶ 12. On March 16, 2011, U.S. Bank sold the property Michael Kennedy and Eva Thanheiser, who financed the purchase by executing a new trust deed with Wells Fargo. Compl. [1-1] at ¶¶ 14-15.

## PROCEDURAL HISTORY

On March 17, 2016, Plaintiff commenced these cases by filing three claims for relief in state court: declaratory relief (declaring the foreclosure sales void), trespass, and invalid encumbrance. *See, e.g.*, Compl. [1-1] at 4, 6, 7. The original complaints, in addition to naming the present Defendants, also named and asserted claims against the Prodehls, Mr. Kennedy and Ms. Thanheiser. *Id.* at 1; Bankr. Doc., *ServiceLink*, No. 3:17-cv-00591-MO [ECF 1 - Attach. 1] at 8 ("ServiceLink Compl.")[6]. The action was removed to Bankruptcy Court where Plaintiff moved to remand the case back to state court. *See* Def. U.S. Bank's Resp. [ECF 36] at 2-3. Judge Randall Dunn denied Plaintiff's motion, holding that Plaintiff's claim for declaratory relief was really an avoidance action under bankruptcy law:

> [A]lthough the complaints in the Adversaries purport to raise only state law issues, ultimately seeking damages for alleged trespasses and invalid encumbrances, the first, foundation claim for relief in each of the Adversaries seeks a declaratory

---

[5] The Christensens originally petitioned for bankruptcy relief on December 28, 2010. Weibel FAC ¶ 1. The case was closed on September 12, 2012. *Id.* ¶ 3. On March 4, 2016, the bankruptcy case was re-opened and Plaintiff was appointed as the current chapter 7 trustee. *Id.*

[6] The original complaint in *Arnot v. ServiceLink*, as located on this court's docket, is buried amongst the "Bankruptcy Documents" located at ECF 1, Attachment 1. For ease of navigation, the ECF document page number is listed for this citation.

5 – OPINION AND ORDER

> judgment that the subject foreclosure sales are void, effectively nullifying any transfers resulting from or subsequent to the foreclosure sales. As defendants have pointed out, Mr. Arnot effectively seeks declaratory relief avoiding all such transfers to support his further claims. However, § 546(a)(1) establishes a two-year statute of limitations from the petition date in the main case for the exercise of a trustee's avoidance powers under the Bankruptcy Code. The question as to whether a trustee, such as Mr. Arnot, can evade the limitations period in § 546(a)(1) by clothing his avoidance claims in state law verbiage is a matter uniquely appropriate for this court to decide.

*In re Neel*, 554 B.R. 241, 247 (Bankr. D. Or. June 14, 2016).

After Judge Dunn's ruling, Plaintiff filed a First Amended Complaint ("FAC") in both cases dropping his claim for declaratory relief. Weibel FAC at 4-5; ServiceLink FAC at 4-5. Soon after, Plaintiff stipulated to the dismissal, with prejudice, of the Prodehls, Mr. Kennedy and Ms. Thanheiser from the case. Stipulated J. of Dismissal at 2, *Arnot v. Weibel et al.*, No. 16-03045-DWH (Bankr. D. Or. Aug. 26, 2016) [ECF 67]; Stipulated J. of Dismissal at 2, *Arnot v. ServiceLink et al.*, No. 16-03044-DWH (Bankr. D. Or. Aug. 26, 2016) [ECF 57]; *see also* Tr. [46] at 18-20.

On January 24, 2017, the cases were referred back to this court for resolution. R&R [ECF 1]. On July 25, 2017, this court held a consolidated hearing on cross-motions for summary judgment where I held that Plaintiff lacked standing under the Bankruptcy Code to bring these actions and dismissed the case with prejudice. Min. of Proceedings [ECF 13]; Tr. [ECF 14]. The Ninth Circuit reversed that decision and reopened the case. Mandate [ECF 22]. Defendants subsequently filed the present motions for summary judgment.

## DISCUSSION

### I.     Plaintiff's Claims as an Avoidance Action Barred by the Statute of Limitations

As described above, Plaintiff's core claim in these cases is that the non-judicial foreclosure sales of the relevant properties are void and that therefore the Neels/Christensens (the

debtors), or their bankruptcy estates, have an ownership interest in the relevant properties, rather than some other parties that purport to have received rights to the properties via the foreclosure sales or a subsequent conveyance. At issue is how Plaintiff may assert that core claim before this court.

As I recognized at oral argument, in the abstract there are at least two ways that a bankruptcy trustee, such as Plaintiff, might assert a claim of ownership over a foreclosed property. First, the trustee could stand in the shoes of the debtor and bring a state law claim (such as trespass) that would be otherwise available to the debtor, independent of any bankruptcy action. The claim of ownership could be asserted as part and parcel of the state law claim. Second, the trustee could bring an avoidance action under federal bankruptcy law to unwind a foreclosure sale and any subsequent conveyance in order to reestablish ownership by the debtor. An avoidance action under bankruptcy law has a two-year statute of limitations. 11 U.S.C. § 546(a)(1).

The task here, in light of the particular facts and history of these cases, is to identify the true nature of Plaintiff's claims. Whether the claims, as asserted, are authentic state law claims, or whether—as Defendants argue—Plaintiff is really just clothing an avoidance action in state law verbiage so as to make an end-run around the statute of limitations and around Judge Dunn's ruling. In other words, even though Plaintiff adamantly claims he is not seeking an avoidance action, should his core claim nevertheless be construed as one. It is an important question to ask because to forgo such scrutiny—and thus give blanket permission to achieve the ends of an avoidance action by way of a state action for declaratory relief—would render the statute of limitations for avoidance actions meaningless.

I hold that Plaintiff's claim for ownership should be construed as an avoidance action. Plaintiff's assertion that he is just standing in the shoes of the debtors is unavailing, for two reasons.

First, the motivations of the Plaintiff do not match those of the debtors. The original debtors (the Neels/Christensens) in both cases were represented by counsel after default and through the purported foreclosure sale process, yet they failed to bring a challenge to the foreclosure process. *See* Tr. [46] at 39. While *Brandup* and *Niday* had not yet been decided, the MERS issue was being actively litigated at the time and such a claim was reasonably available. In other words, the original debtors could have made the claim (that Plaintiff now brings) on their own, through counsel, at the time of the foreclosure sale. Yet they never did so.

Second, when looking at the particular facts and history of the present cases, the way these cases have played out has persuaded me that what Plaintiff is really trying to do here is bring an avoidance action in the guise of a state law claim. For example, Plaintiff originally sought declaratory relief in both cases declaring him (and/or the debtors) to be the owner of the properties, but then dropped those claims when Judge Dunn indicated he saw that claim as an avoidance action barred by the statute of limitations. *Compare* Compl. [1-1] at ¶ 16 *with* Weibel FAC [34-1] at ¶ 15. Then, after these cases returned to this court, Plaintiff moved to add the declaratory relief claim back in one case, but not the other. *Compare* Proposed Second Am. Compl., *ServiceLink*, No. 3:17-cv-00591-MO [ECF 25 - Attach. 1] at 5 *with* Proposed Second Am. Compl., *Weibel et al.*, No 3:17-cv-00592-MO [ECF 30 - Attach. 1] at 5. Defendants have argued that this shuffling of the declaratory relief claim is evidence of gamesmanship; that Plaintiff is trying to obscure the vehicle by which he asserts his core claim (that the foreclosure sales are void) in order to avoid having it pinned down as an avoidance action. *See* Def. U.S.

Bank's Resp. [ECF 36] at 3. Faced with Defendants' argument, Plaintiff has never given a plausible alternative explanation of the peculiar procedural history of this case.

The same is true for the decision to dismiss the Prodehls and Kennedy/Thanheiser from the cases. At oral argument, Plaintiff's counsel explained that "we don't want to go after those people . . . [w]e have no claims against [them] . . . [w]e've dismissed our claims against them." Tr. [46] at 19. Plaintiff's counsel also insisted that Plaintiff does not seek a declaratory judgment from this court that would declare that the Prodehls and Kennedy/Thanheiser do not own the disputed properties. *Id.* at 20. But, under Plaintiff's own theory of the case, I fail to see how this can be so. Plaintiff wants this court to declare that the foreclosure sales are void. This would necessarily return the ownership status of the properties to where they lay immediately pre-foreclosure. The legal effect would be to unwind the foreclosure sales and all subsequent conveyances. While Plaintiff claims he does not want to unwind these subsequent conveyances, he fails to offer a coherent explanation for how that assertion squares with what he is asking this court to do. As with the declaratory relief business, these procedural maneuverings appear to be an attempt to obscure the true aim of Plaintiff's trespass and invalid encumbrance claims: undoing the foreclosure sale and subsequent conveyances.

Indeed, it seems quite clear that what Plaintiff, as bankruptcy trustee, is really after is not the damages that might result from a trespass or invalid encumbrance claim. Rather, the prize to be won is a particular slice of a trespass or invalid encumbrance judgment in his favor: the part of the judgment that declares the properties at issue are owned by the original debtors or their bankruptcy estates. In other words, Plaintiff wants to use trespass and invalid encumbrance claims as a vehicle to have a court validate his assertion that the debtors are the actual owners of the disputed properties. The end goal is not to get the damages that might flow from the tort of

trespass or invalid encumbrance. If it were, why would Plaintiff drop the tort claims against the very people who are actively occupying and encumbering the properties (i.e. Mr. Prodehl and Kennedy/Thanheiser)? It is because the real end goal is to get a piece of the properties and then run over to bankruptcy court to assert a litany of potential claims which have huge implications that significantly outsize any trespass or invalid encumbrance claim.

Stated simply, the facts and history of these cases show that Plaintiff really wants to get to bankruptcy court. The established way to do that is through an avoidance action under bankruptcy law. But the door has been shut on that route due to the statute of limitations. And Plaintiff can't climb the back fence by disguising an avoidance action as a state law claim.

## II. Plaintiff's Failure to Join Required Parties

Under Federal Rule of Civil Procedure 19, a party must be joined if it can claim "an interest relating to the subject of the action and is so situated that disposing of the action in the [party]'s absence may: (i) as a practical matter impair or impede the [party]'s ability to protect the interest . . . ." Fed. R. Civ. P. 19(a)(1)(B). When joinder of a required party is not feasible, "the court must determine whether, in equity and good conscience, the action . . . should be dismissed." Fed. R. Civ. P. 19(b). In deciding whether to dismiss, the court should consider (1) the potential prejudice of a judgment to the absent party, (2) the extent to which that prejudice can be mitigated, (3) whether a judgment in the party's absence would be adequate, and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. Fed. R. Civ. P. 19(b)(1)-(4).

As discussed above, in order to rule in favor of Plaintiff on his state law claims of trespass and invalid encumbrance, I would necessarily have to declare that the Neels/Christensens, or their bankruptcy estates, have an exclusive ownership or possessory

interest in the relevant properties. Needless to say, such a declaration would have massive implications for those parties who thought they received rights to the properties in conveyances subsequent to the allegedly invalid foreclosure sales. Most notably, the people who now live in these properties and think they own them—Joseph Prodehl (*ServiceLink*) and Mr. Kennedy and Ms. Thanheiser (*Weibel et al.*)—would be kicked out and left with nothing. These absent parties thus have an extremely significant interest directly related to the subject of the present action, which they are unable to protect due to their absence.

Mr. Prodehl, Mr. Kennedy and Ms. Thanheiser are therefore required parties to these two cases. However, Plaintiff has already dismissed these parties with prejudice. As a result, these required parties cannot be joined as defendants, which leaves me to determine whether this case should be dismissed. The only factor militating against dismissal is the real possibility that Plaintiff will be left without a remedy. But if Plaintiff finds himself in such a predicament, it is a mess of his own making for two reasons. One, Plaintiff himself agreed to dismiss these required parties with prejudice. The murky history of how Mr. Prodehl, Mr. Kennedy and Ms. Thanheiser were originally named as defendants and then later dropped from the case does not change the analysis. There has never been any explanation as to how the rulings that Plaintiff seeks from this court wouldn't necessarily impact the interests of the current occupants and possessors of the properties. Two, an alternative avenue of relief—an avoidance action in bankruptcy court—is foreclosed only because Plaintiff did not pursue it in a timely fashion.

In any event, the possibility that Plaintiff will be left without a remedy does not outweigh the risk of severe prejudice to the absent parties that a judgment in Plaintiff's favor would entail. I therefore find it necessary to dismiss these cases for failure to join required parties under Federal Rule of Civil Procedure 19.

### III. The Five-Year Statute of Limitations under ORS 86.767(6) (as applied to *Arnot v. Weibel et al.* only)[7]

Even if Plaintiff could establish ownership over the disputed properties via a state law claim, rather than through an avoidance action, Plaintiff must do so within the five-year limitations period to commence an action against a trustee's sale, as established by ORS § 86.767(6) ("[F]ailure to redeem or to commence an action against the trustee within five years of the date of a trustee's sale . . . bars any action under this section or any other applicable law."). As described above, in *Weibel et al.* the disputed foreclosure sale was initiated on June 30, 2010. Compl. [1-1] at ¶ 12. Plaintiff filed his action challenging the foreclosure sale on March 17, 2016. *Id.* at 1.

Plaintiff argues that the limitations clock did not start ticking on June 30, 2010, because that was not the date of sale. It was not the date of sale because the purported "sale" was void—it never happened. The MERS-appointed successor trustee was not a valid trustee, thus there was never any "trustee's sale." Tr. [46] at 22 ("[I]f the trustee is not properly appointed, the sale never occurred."). Thus, Plaintiff contends the appropriate statute of limitations in this case is the ten-year statute of limitations for adverse possession. *Id.*

I hold that the five-year statute of limitations period begins on the date of a facially valid trustee's sale, even if that sale is disputed and it is possible that it could later be deemed "void." Under Plaintiff's theory, a defendant wishing to assert a limitations defense under ORS § 86.767(6) would essentially have to wait until a court rules on the merits of the "void" issue in order to know whether or not the limitations period had run, making the limitations defense

---

[7] I note that all parties agree that the five-year statute of limitations is only potentially dispositive in *Arnot v. Weibel et al.* In *ServiceLink*, Plaintiff challenged the trustee's sale within the five-year period regardless of how the date of sale is defined. *See* Tr. [47] at 27-28.

12 – OPINION AND ORDER

practically worthless. That is not how a statute of limitations works. When a purported trustee's sale takes place and its validity is disputed—e.g., a claimant alleges the sale is actually void—the statute of limitations says the claimant has five years to bring the claim; if they dither, the defendants can assert the limitations defense. The clock starts ticking when the complainant has something to complain about.

Because the limitations period began on June 30, 2010, and Plaintiff did not file his action challenging the purported trustee's sale until March 17, 2016, his action is not timely and must be dismissed under ORS § 86.767(6). Again, dismissal on this ground applies only to *Arnot v. Weiebel et al.* (3:17-cv-592-MO).

## CONCLUSION

For the foregoing reasons, which supplement my remarks at oral argument, I GRANT Defendant ServiceLink's Motion for Summary Judgment [23] in *Arnot v. ServiceLink* (3:17-cv-591-MO). I also GRANT Defendant Weibel's Motion for Summary Judgment [23] and Defendant U.S. Bank's Motion for Summary Judgment [27] in *Arnot v. Weibel et al.* (3:17-cv-592-MO). Both cases are dismissed with prejudice.

IT IS SO ORDERED.

DATED this 9th day of December, 2019.

MICHAEL W. MOSMAN
Chief United States District Judge